**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., | Civil Action No. 23-473 (BRM) (MAH) |
| **Plaintiff,** | |
| v. | |
| HONEYWELL INTERNATIONAL, | **REPORT AND RECOMMENDATION** |
| **Defendant.** | |

## I.    INTRODUCTION

Presently before the Court is Defendant Honeywell International's ("Defendant" or "Honeywell") Motion to Vacate Default Judgment.  Mot. to Vacate Default J., Nov. 7, 2025, D.E. 14.  Plaintiff Community Association Underwriters of America, Inc. ("Plaintiff") opposes the motion.  Pl.'s Opp'n, Dec. 1, 2025, D.E. 21.  Defendant replied on December 8, 2025.  Def.'s Reply, Dec. 8, 2025, D.E. 23.  The District Court referred the motion to the Undersigned for a Report and Recommendation.  *See* Local Civ. R. 72.1(a)(2).  The Undersigned has considered this matter without oral argument.  Fed. R. Civ. P. 78; Local Civ. R. 78.1.  For the reasons set forth below, the Undersigned respectfully recommends the District Court **GRANT** Defendant's motion to vacate default judgment and **DENY** Defendant's motion to dismiss under Rule 12(b)(5).

## II.    BACKGROUND

Plaintiff is a California-based insurance company.  Compl., D.E. 1, ¶ 1.  Plaintiff maintains that it provided insurance to a condominium property owned by The Lake Forest Condominium Association in Frisco, Colorado (the "Property").  *Id.* ¶ 3.  On or about January

27, 2021, the Property suffered water damage that exceeded $200,000. *Id.* ¶ 10. Plaintiff paid claims under the policy, and thereby any rights to recovery were subrogated to it. *Id.* ¶ 13.

Plaintiff brings this action to recover the monies it paid to the insured/subrogor on the insurance claim. *Id.* ¶¶ 9-13. Plaintiff alleges that the water damage was caused by a thermostat that Defendant defectively designed, "in that its design caused the heater [at the Property] to operate improperly (indeed, shut down), thereby allowing certain water pipe(s) to freeze and burst, resulting in substantial water loss." *Id.* ¶ 11. Plaintiff brings claims sounding in state law negligence, products liability, and breach of warranty.

On May 4, 2023, the Honorable Kevin McNulty, U.S.D.J. (ret.), noticed a call for dismissal under Federal Rule of Civil Procedure 4(m). D.E. 4. On May 16, 2023, Plaintiff filed a notarized Affidavit of Service signed by a process server, Gladimar Robles ("Robles"). Aff. of Service ("Robles Aff."), D.E. 5. Robles represents that on May 5, 2023, she successfully served the summons and complaint at an address associated with Defendant in Morris Plains, New Jersey. *Id.* In the affidavit, Robles states that she "[l]eft a copy with a person authorized to accept service, who provided verbal confirmation that he or she [wa]s authorized by appointment or law to receive service on behalf of the Defendant." *Id.* That individual was identified as Sam Godoy ("Godoy"). *Id.* Although Robles states that Godoy was authorized to accept service for Defendant, she also acknowledges that Godoy refused to provide information regarding his role in the company. *Id.*

On June 26, 2023, Judge McNulty directed Plaintiff to move the action by requesting the entry of default against Defendant. D.E. 6. Plaintiff moved for the entry of default on July 26, 2023, D.E. 7, and the Clerk of Court entered default on July 27, 2023. Plaintiff then moved for default judgment on July 31, 2023. D.E. 8. The Court terminated that motion because Plaintiff's

request lacked a computation of damages and affidavit detailing that amount. See Clerk's Quality Control Message, Aug. 1, 2023.

On September 5, 2023, Judge McNulty directed Plaintiff to move for default judgment. D.E. 9. On September 20, 2023, Plaintiff moved for default judgment, curing the deficiencies of the previous motion. D.E. 10. The Clerk entered default judgment in favor of Plaintiff on September 25, 2023, in the amount of $288,867.50.[1] D.E. 11.

On November 7, 2025, Defendant moved to vacate the default judgment. Mot. to Vacate Default J., D.E. 14. Defendant argues vacatur is appropriate because service of process was insufficient, in violation of Federal Rule of Civil Procedure 60(b)(4). *Id.* at 15. Defendant alternatively argues the default judgment can be vacated under Federal Rule of Civil Procedure 60(b)(6). *Id.* at 20. Finally, Defendant argues the case should be dismissed under Federal Rule of Civil Procedure 12(b)(5) based on insufficient service of process. *Id.* at 25.

In support of its motion, Defendant submitted an affidavit from Godoy. D.E. 14-2 ("Godoy Aff."). Godoy attests that although Defendant now directly employs him, that was not true during the May 5, 2023 service date. *Id*. ¶ 2-3. On the date of service, Godoy worked for a third-party security company. According to Godoy, after the front desk informed Godoy that Robles was in the lobby of Defendant's Morris Plains building, Godoy told Robles that he did not work for Defendant, he could not accept service of process for Defendant, and that Robles should serve the complaint and summons on Defendant's registered agent. *Id.* ¶ 5. Godoy asserts the process server then dropped the package on the floor and left. *Id.* ¶ 6. Godoy

---

[1] Although Plaintiff was not required to serve written notice of the motions for default and default judgment because Defendant did not appear in the action, *see generally* Fed. R. Civ. P. 55, Plaintiff certified it served notice of the motion for default judgment on Defendant, D.E. 10, at 5. The Court notes, however, that Plaintiff certified sending notice to an address in "Morrison Plains," rather than "Morris Plains," New Jersey.

submitted an incident report documenting the interaction that same day, *id.* ¶ 7, which he attached as an exhibit, *id.* at 5.

Defendant also submitted an affidavit of Caitlyn Owens ("Owens"), who is a senior paralegal with Honeywell Security Americas LLC, which is a subsidiary of the Defendant. D.E. 14-3 ("Owens Aff.") ¶ 2. In that capacity, Owens is responsible for, among other things, the processing of "service of process handled through Honeywell's registered agent." *Id.* ¶ 3. Owens certified neither she nor, to her knowledge, anyone within the Honeywell legal department was aware of the lawsuit, the default, or the default judgment.[2] *Id.* ¶ 11. Owens also certified that no service of process was completed on Defendant's registered agent, Corporation Service Company ("CSC"), located in Ewing, New Jersey.[3] *Id.* ¶ 6. Defendant's reply brief reiterates these arguments. D.E. 23.

In opposition, Plaintiff argues that, under New Jersey law, it properly served Defendant on May 5, 2023. *Id.* at 4-12. Plaintiff also asserts Defendant fails to meet the standard to vacate the default judgment under Rules 60(b)(4) and (6). *Id.* at 12-14. Plaintiff also contends Defendant abandoned its Rule 12(b)(5) claim by submitting an answer and affirmative defenses. *Id.* at 15.

Plaintiff also attached exhibits in support, including a declaration by Robles. D.E. 22, at 14-15 ("Robles Decl."). Robles states she went to Morris Plains office on May 16, 2023, and announced her intent to serve Defendant. *Id.* ¶¶ 3-4. Robles asserts after somebody from the

---

[2] Owens also confirmed on that neither Resideo Technologies, Inc., which she believes manufactured the thermostat, nor Sedgwick Claims Management Service, the third-party claims administrator for Defendant's insurance company, received notice or documentation of the lawsuit. Owens Aff. ¶ 9.

[3] Defendant also submitted an answer and affirmative defenses to Plaintiff's Complaint with the instant motion. D.E. 14-4.

front desk said another individual would come down, "a man came into the lobby wearing a Honeywell badge." *Id.* ¶¶ 6-7. Robles indicates "[t]he man refused to provide his name . . . [he] did not identify himself as working for some third-party security company . . . [he] did not provide any other address for service . . . [and h]ad anyone offered up another address for service, [she] would have stopped the service attempt, and emailed the client notice of the updated address." *Id.* ¶¶ 8-11. Robles states after "[t]he man who came into the lobby refused to take the legal documents from [her] . . . [she] drop served the documents as per New Jersey Rules of Civil Procedure 4:4-3 and 4:4-4 since the individual refused to physically take the copies and [she] left the premises." *Id.* ¶¶ 12-13.

### III. DISCUSSION

#### A. Motion to Vacate Default Judgment under FRCP 60(b)(4)

##### a. Governing Law

Federal Rule of Civil Procedure 60(b) governs whether the Court may vacate a default judgment against a party. Defendant argues that it is entitled to relief under Rule 60(b)(4), and alternatively, Rule 60(b)(6). Rule 60(b)(4) and (6) provide, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [if:] . . . the judgment is void[,] . . . [or] any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4) and (6). The Court first addresses Rule 60(b)(4).

Defendant argues that the underlying default judgment is void because Plaintiff failed to effectuate service of process. "Proper service of process is required to establish personal jurisdiction over a defendant. Without personal jurisdiction, the Court cannot enter default judgment." *Days Inn Worldwide, Inc. v. Hartex Ventures, Inc.*, No. 10-336, 2011 WL 1211353, at *2 (D.N.J. Mar. 28, 2011) (internal citations omitted). A decision to set aside a default

judgment is left primarily to the discretion of the Court, but the Third Circuit has stated that default judgments are disfavored so that "cases may be decided on their merits." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984) (internal citations and quotation marks omitted); *see also* Charles A. Wright & Arthur Miller, 11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.) (stating same particularly where "no actual injustice will ensue" by vacating the default judgment and proceeding to decide the case on its merits).

In analyzing whether to vacate a default judgment, courts generally use three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *World Ent. Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012) (quoting *$55,518.05*, 728 F.2d at 195 (collecting cases)). However, "[a] default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside." *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 16 (3d Cir. 1985); *see also Peralta v. Heights Med. Ctr. Inc.*, 485 U.S. 80, 84-86 (1988) (holding that there is no requirement of a meritorious defense to vacate default judgment when service was defective).

In ascertaining whether service was properly effected, and accordingly, whether the default judgment was void, courts must afford weight to objective indicators, such as a sworn affidavit by a disinterested party. *In re Graves*, 33 F.3d 242, 251 n.16 (3d Cir. 1994) ("[The Court] accordingly give[s] weight to an objective indication that process has been served."); *see also* Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.) (stating that a process server's return creates a rebuttable presumption that service was valid) (collecting cases). However, such weight does not create an irrebuttable presumption that service was proper. *See* Wright & Miller 4B Fed. Prac. & Proc. Civ. § 1130 (3d ed.) ("Although the return of service of the summons and

6

the complaint is strong evidence of the facts stated therein, it is not conclusive and may be controverted upon a showing that the return is inaccurate."). For a party to rebut valid service accompanied by an affidavit, it must submit competent evidence to do so, and may not rely merely on statements by interested parties. *See Noske v. Dicaterino Contracting, Inc.*, No. 92-4153, 1994 WL 386850, at *4-5 (D.N.J. July 19, 1994) (holding that the "bare assertion" affidavits of the parties and their spouses standing alone would not overcome the sworn statement of effective service of process by the process server). To that end, courts afford more weight to a disinterested party's sworn affidavit than the bare assertion of an interested party. *FROF, Inc. v. Harris*, 695 F. Supp. 827, 829 (E.D. Pa. Aug, 19, 1988).

Federal Rule of Civil Procedure 4(h)(1) allows service upon a corporation:

> (1)  in a judicial district of the United States:
>
> (A)  in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B)  by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1).

It follows that under Rule 4(h)(1)(A), a plaintiff may effect service of process upon a corporation by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). The New Jersey Rules of Court provide the applicable state law of service of process on corporations:

> (1) Upon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual

7

> personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf;
>
> . . .
>
> (6) Upon a corporation, by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee, or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

N.J. Ct. R. 4:4-4(a)(1), (6).

Plaintiff asserts New Jersey caselaw supports its contention that Robles properly served Defendant on May 5, 2023. Plaintiff relies primarily on *O'Connor v. Altus*, 67 N.J. 106 (1975). In *O'Connor*, the Supreme Court of New Jersey held that service of process upon the receptionist of the defendant's managing agent comported with notions of due process. *Id.* at 126-28 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The *O'Connor* court, adopting the two-prong test set forth in *American Football League v. National Football League*, 27 F.R.D. 264 (D. Md. 1961), reasoned (1) the receptionist was "sufficiently integrated with the small organization . . . to know what to do with the papers," and (2) "it was reasonable for the deputy sheriff to assume she had authority to receive service." *Id.* at 128. The *O'Connor* court also noted the papers at issue were ultimately sent to the correct entity. *Id.*

Plaintiff correctly indicates that, thereafter, courts have expanded *O'Connor*'s two-pronged test to permit service on a variety of corporate representatives. *Hudson Hosp. OPCO, LLC v. Regency Heritage Nursing & Rehab. Ctr., LLC*, No. 16-5673, 2017 WL 4882493, at *7 (D.N.J. Oct. 30, 2017) (finding service proper because a part-time receptionist held herself out as having authority to receive service); *Flynn v. Pulaski Constr. Co.*, No. 02-2336, 2006 WL 47304, at *5 (D.D.C. Jan. 6, 2006) (reasoning service was proper under New Jersey law on an office manager, "a title implying more power than a receptionist"); *Shannon v. Acad. Lines, Inc.*, 346 N.J. Super. 191, 197 (App. Div. 2001) (holding service proper on a Human Resources Director who received certified mail with return receipt requested and knew, but failed to take, the required steps to inform the proper individuals); *Davis v. DND/Fidoreo, Inc.*, 317 N.J. Super. 92, 99 (App. Div. 1998) (holding service proper on an assistant bank manager who regularly accepted subpoenas and represented she was authorized to receive service).

Defendant responds that *O'Connor* and its progeny are distinguishable because in those cases, the person receiving service either had clearly defined corporate responsibilities or held themselves out as authorized to accept service. Defendant maintains that in this case, Godoy lacked authorization to accept service and actually denied Robles's attempt to serve him. Defendant urges the Court to rely on *West v. American Honda*, No. 08-700, 2008 WL 4104683 (D.N.J. Aug. 28, 2008) and *Broschart v. Husqvarna AB*, No. 20-18795, 2021 WL 3269664 (D.N.J. July 30, 2021).

In *West*, the Court noted that New Jersey law places the burden on the plaintiff to prove "an alleged agent has specific authority, express or implied, for the receipt of process." 2008 WL 4104683, at *5 (quoting *Zoning Bd. of Adjustment of Sparta Twp. v. Service Elec. Cable*, 198 N.J. Super. 370, 377 (App. Div. 1985)). The *West* plaintiff failed to carry that burden

9

because he did not offer "any evidence that he served a proper agent of Defendant or that an agency relationship exist[ed] between the Security Office of Honda Parts Center and Honda Motor Co., Inc." *Id.* at *4.

*Broschart*, which involved a foreign corporation and thus slightly different service requirements, nonetheless stands for the proposition that "New Jersey courts have found that mere acceptance of service by an employee other than an officer, director, trustee or managing agent does not establish that the employee was authorized to do so." 2021 WL 3269664, at *3 (citing *Jameson v. Great Atl. & Pac. Tea Co.*, 363 N.J. Super. 419, 429 (App. Div. 2003)). *West* and *Broschart* are compatible with *O'Connor* and its progeny. Collectively, those cases require that the person receiving process must be "sufficiently integrated" with the organization to know what to do with the papers, it must be reasonable for the process server to believe that the recipient was authorized to accept service. In fact, in *O'Connor*, the court instructed that service on a corporation through an individual requires that person to be "so integrated with the organization that he will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service." 67 N.J. at 128. In *Jameson*, the Appellate Division relied on O'Connor to vacate default judgment after finding that service of process on cashier for an A&P, a national supermarket chain, did not sufficiently apprise A&P of the suit. 363 N.J. Super. at 428 (quoting *O'Connor*, 67 N.J. at 128).

### b. Analysis

The Court finds the May 5, 2023, service attempt failed to comport with either the Federal or New Jersey Rules for serving corporations. Courts should generally afford more weight to the disinterested party's recollection of events (*i.e.*, Robles), than that of the interested party (*i.e.*, Godoy, who is now employed by Defendant). *FROF, Inc.*, 695 F. Supp. at 829. But

10

the Court notes discrepancies between Robles's May 16, 2023 affidavit and her November 25, 2025 declaration. For example, the Robles Affidavit asserts the service attempt occurred on May 5, 2023, D.E. 5, but the Robles Declaration states she attempted to serve process on May 16, 2023, Robles Decl. ¶ 3. Additionally, the Robles Affidavit identifies Godoy by name, D.E. 5, but the Robles Declaration avers the person she spoke to "refused to provide his name," Robles Decl. ¶ 8. These inconsistencies lead the Court to question the veracity of Robles's initial contention that she "[l]eft a copy with a person authorized to accept service, who provided verbal confirmation that he or she is authorized by appoint or law to receive service on behalf of the Defendant." D.E. 5. On the other hand, Godoy's October 29, 2025 Affidavit, Godoy Aff. ¶¶ 1-4, is consistent with the incident report he submitted on May 5, 2023, the date of attempted service, D.E. 14-2, at 5.

Robles's Affidavit and Declaration are, however, consistent in one important respect: In neither instance does Robles indicate that Godoy disclosed his employer or position within the company. The Affidavit of Service provides that Godoy "Refused Title." D.E. 5. The Declaration does not state that Godoy provided his employer or position, and simply states that he did not disclose that he worked for a third-party security company. Robles Decl. ¶ 9. The Declaration also states that Godoy "did not provide any other address for service of the complaint." *Id.* ¶¶ 10-11.

Godoy did not have a burden to prove to Robles he was not an authorized agent of Defendant. Rather, Plaintiff bears the burden of proving process was served on "a proper agent of Defendant or that an agency relationship exist[ed]" between Godoy and Defendant. *West*, 2008 WL 4104683, at *4. On the record before this Court, Plaintiff fails to satisfy its burden. The only evidence Plaintiff offers that Godoy was an agent of Honeywell authorized to accept

11

service of process is that Godoy "came into the lobby wearing a Honeywell badge." Robles Decl. ¶ 7. Even though Godoy held onto the papers and logged an incident report, the Court finds that simply wearing a Honeywell badge is not enough proof that Godoy was "sufficiently integrated" with the corporation or that it was reasonable for Robles to infer that Godoy had authority to accept service, as *O'Connor* requires. 67 N.J. at 128.

Defendant's conduct upon learning of the lawsuit and default judgment also supports a finding that Godoy plainly lacked authority to receive service on behalf of Defendant. Owens attests that after first becoming aware of the lawsuit and default judgment on September 24, 2025, she determined that Plaintiff did not serve CSC and contacted Godoy to ascertain what occurred. Owens Aff. ¶¶ 4-8. That same day, Defendant retained outside counsel for this matter. *Id.* ¶ 10. Less than six weeks later, Defendant filed the instant motion to vacate default judgment, and a proposed answer and affirmative defenses. In *Jameson*, the Appellate Division noted that "given the speed and diligence with which [the defendant] moved to attempt to vacate the default judgment once it was apprised of the suit, we have serious reservations that [the process server] forwarded the suit papers to any [defense] official with authority to begin a defense." 363 N.J. Super. at 428.

New Jersey law "does not require that the delivery of process be accomplished during a face-to-face meeting with the person upon whom service is to be effected" or "that it be surrounded by medieval formalism." *O'Connor*, 67 N.J. at 127. But the caselaw discussed above makes clear that New Jersey law requires more than dropping papers in front of someone of indeterminate relationship with the party to be served, even if they are wearing a company badge. It was not reasonable for Robles to infer or assume that Godoy was sufficiently

12

integrated with Honeywell, a very large multinational conglomerate,[4] given that Godoy did not

provide a title or physically accept the papers, much less hold himself out as authorized to do so.

Robles Decl. ¶ 5.  Accordingly, the Court finds the May 5, 2023, service attempt was insufficient

under New Jersey law and, for those same reasons, the federal service rules.

Therefore, the Court respectfully recommends that the District Court grant Defendant's

motion to vacate the default judgment so the case may be decided on its merits.  Because the

Court finds that Defendant is entitled to relief under Rule 60(b)(4), the Court need not reach

Defendant's arguments regarding relief under Rule 60(b)(6).

### B. Whether the Complaint Should be Dismissed Pursuant to Rule 12(b)(5) and Whether the Attempted Service Should be Quashed

District courts possess "broad discretion" when evaluating a motion to dismiss for

insufficient service of process.  *Unbenhaur v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).  Where a

plaintiff acts in good faith, but fails to effect proper service of process, courts are reluctant to

dismiss an action.  Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1354 (3d ed.) ("[T]he court

may use its discretion not to dismiss the action in those cases in which it is not clear whether

proper service has been made; the simplest solution in this situation is to quash process and allow

the plaintiff another opportunity to serve the defendant . . . The reluctance of the courts to

dismiss an action when there is a possibility of [proper service] is understandable inasmuch as

the dismissal . . . needlessly burdens the parties with additional expense and delay and postpones

the adjudication of the controversy on the merits.").  Rather, courts will elect to quash service

and grant a plaintiff additional time to properly serve the defendant.  *Id.*; *see also Sampath v.*

*Concurrent Techs. Corp.*, 227 F.R.D. 399, 401 (W.D. Pa. Apr. 20, 2005) ("[D]ismissal of a

---

[4]  Plaintiff describes Honeywell as "a multi-billion dollar corporation which is traded on the NASDAQ with over 100,000 employees and a worldwide reach."  D.E. 21, at 15.

complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.  In such instances, the district court should at most, quash service, leaving the plaintiff [] free to effect proper service.") (alteration in original) (internal citation and quotation marks omitted).

Here, while it is clear that Defendant now has actual notice of the suit, proper service is more than a formality, and it must be effectuated.  *See, e.g.*, *Harry v. David J & P Acquisition, Inc.*, 865 F. Supp. 2d 494, 500 (D. Del. 2011) ("Proper service is crucial in cases . . . in which a default judgment has been entered, since proper service commences the running of the time which forms the basis of the default.  In the 'sensitive area' of default judgments, procedural requirements are strictly constructed." (internal quotations omitted)).  The Court finds that Plaintiff acted in good faith.  However, based on the evidence provided by Defendant, the discrepancies in Robles's Affidavit and Declaration, and, most critically, the fact that Robles failed to leave the summons and complaint with one of Defendant's registered agents, the presumption of validity attendant to the alleged service of process has been rebutted.  But to allow the case to be heard on its merits, and because Plaintiff acted in good faith in trying to effect service, the Court respectfully recommends that the action not be dismissed.  Rather, the Court respectfully recommends that the District Court quash the service purportedly effected on May 5, 2023, and grant Plaintiff an additionally sixty (60) days to effectuate proper service of process on Defendant.[5]

---

[5]  Given that Defendant is plainly aware of the lawsuit and has submitted a proposed answer and affirmative defenses, and in the interest of moving this matter to adjudication on the merits, Defendant may consider waiving formal service of process under Rule 4(d).

14

IV.    **CONCLUSION**

For the foregoing reasons, the Undersigned respectfully recommends that the District Court **GRANT** Defendant's motion to vacate default judgment, **DENY** its motion to dismiss the complaint pursuant to Rule 12(b)(5), quash the alleged service upon Defendant, and allow Plaintiff sixty (60) days to effect proper service of process on Defendant.

The parties have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 7.1(c)(2).

**IT IS ORDERED** that the Clerk of Court shall **TERMINATE** the motion to vacate default judgment, D.E. 14, and activate this Report and Recommendation for the District Court's review.


*/s/ Michael A. Hammer*
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**


**Dated**: January 14, 2026